[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13670
_____

D.C. Docket No. 8:12-cr-00418-JDW-MAP-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RONALD WILLIAM BROWN,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 25, 2014)

Before TJOFLAT, JILL PRYOR, and FAY, Circuit Judges.

PER CURIAM:

Ronald William Brown appeals his 240-month sentence, after pleading guilty to eight counts of possession and receipt of child pornography. We affirm his sentence but remand for the limited purpose of correcting a scrivener's error in the judgment.

## I. BACKGROUND

A. Factual History

United States Immigration and Customs Enforcement ("ICE") agents conducted an extensive worldwide investigation into child pornography in 2010. In the course of that investigation, ICE agents arrested Michael Arnett for the production of child pornography. The agents examined the computers seized from Arnett and found he had been communicating with Brown. Brown lived in Largo, Florida, owned a business called Puppets Plus, and ran a puppet ministry for children at his church.

Between April and October 2011, Brown and Arnett had discussed the abduction, murder, and cannibalization of children. They specifically had discussed "C," a boy who attended Brown's church. Brown had photographed C and sent the image to Arnett. During an online chat session, the two men discussed eating C. Brown stated he would "love to run [his] hand over" the boy's legs and thighs and wanted to "get a hand on [the boy's] little rump." Gov't Am. Mot. for an Upward Variance Ex. 4 at 2-3. Brown and Arnett also mentioned a two-year-

2

old girl, whom Arnett claimed to have eaten.  Arnett confirmed the two-year-old girl had "[tasted] good" and stated she had "made a sweet little oven roast."  *Id.* at 1.  When Arnett said the girl's "bottom [had been] . . . good" and "her pudgy thighs [had been] just great," Brown responded: "You are making me hungry."  *Id.*  Arnett sent Brown a picture of a three-year-old girl "being snuffed in her kidnapper's lap."[1]  *Id.* at 7.  Brown stated the picture was "nice," he would enjoy "doing" the boy from his church that way, it would be "hot" to see a video of a kidnapper strangling a child, and he "would like to know what to expect."  *Id.* at 8-9.

During the investigation, ICE agents found a profile for Brown on a website called "cutedeadguy.net."  Gov't Am. Mot. for an Upward Variance Ex. 14.  The profile described Brown's interests: "I love them young and dead.  I enjoy them fresh, but like to see them displayed in their casket too."  *Id.*  It also stated Brown has had a "[s]trong interest" in necrophilia since his youth.  *Id.*

On July 19, 2012, ICE agents executed a search warrant at Brown's residence and seized a computer with multiple media and storage devices.  Upon examination of Brown's computers, the agents found images of child pornography, children engaged in bondage, children with their genitals exposed, and children who appeared to be dead.  Agents also found a CD in Brown's bedroom containing

---

[1] Brown and the men with whom he conversed in chat rooms used the term "snuff" as slang for "kill."  *See, e.g.*, Gov't Am. Mot. for an Upward Variance Ex. 12 at 14.

images of child pornography, images of young boys in their underwear, images that appeared to be deceased children, and a flyer for a missing child.  Agents found books on serial killers and cannibalism and a blow up sex doll dressed in little boys' clothes.  Brown told the agents the chats were just fantasies, and he would never act on them.

After a forensic review, agents found chat logs between Brown and "Karsten."  Gov't Am. Mot. for an Upward Variance Ex. 1 at 2.  The two men discussed images of young boys bound with their genitals exposed.  "I like the blond boy. . . . Would love to snuff him. . . . Very hot pics. . . . That boy looks dead. . . . I like that one.  I would love to kill them."  *Id.*  Brown specifically asked for pictures of "dead boys."  *Id.* at 4.  Chat logs between Brown and Geoffrey Portway revealed their discussions of murder and cannibalization of boys from Brown's church.

The forensic review revealed more than 200 pornographic images of children as well as hundreds of other images of child bondage and dead children.  Additionally, there were more than 100 images of Andrew, a boy from Brown's church who had died from a brain tumor.  Brown had pictures of Andrew in the hospital and at his memorial service; he discussed Andrew with the user name "fenianfun."  Gov't Am. Mot. for an Upward Variance Ex. 9.  Agents also found

4

Brown's written journals, dating back to 1978. In these journals, Brown recorded his everyday activities and his obsession with various young boys over the years.

B. Procedural History

In a superseding indictment, a federal grand jury charged Brown with three counts of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) (Counts 1-3) and five counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and (b)(1) (Counts 4-8). Brown pled guilty to all counts before a magistrate judge; the district judge accepted his plea.

In the Presentence Investigation Report ("PSI"), the probation officer calculated Brown had a Sentencing Guidelines range of 78 to 97 months in prison, based on a total-offense level of 28 and a criminal-history category of I. The probation officer noted Brown faced statutory-maximum penalties of 10 years in prison on the three possession counts and at least 5 years, but not more than 20 years, in prison on the five receipt counts. The probation officer also noted an upward variance might be warranted, because of Brown's obsession with neighborhood children and his escalating interest in the sexual molestation, murder, and cannibalism of children.

Brown filed a sentencing memorandum, asserting his criminal conduct had been "aberrant," and his chats had involved "fantasy behavior." Sentencing Mem.

5

at 6, 8.  He argued there was "no proof" he had committed a violent act against a child.  *Id.* at 6.  He also contended he was amenable to treatment and presented a low risk of recidivism, based on a defense expert's psycho-sexual evaluation of Brown and various studies.

The government filed a motion for upward variance.  The motion included several excerpts from Brown's chats; a redacted picture of a boy from Brown's church, which Brown had marked to show how he would butcher the boy; a copy of Brown's business card for his puppet business and a picture of Brown with puppets; pictures of the covers of Brown's books about cannibalism and serial killers; a copy of Brown's profile on "cutedeadguys.com"; and a copy of a news article about Portway's guilty plea.  The government later submitted a substantially similar amended motion.

At the sentencing hearing, Brown accepted as true the factual allegations contained in the PSI.  The district judge noted the sentencing factors contained in 18 U.S.C. § 3553(a).  The judge acknowledged Brown had no criminal history and had been employed his entire life, but Brown has had an "unhealthy . . . obsession with young boys for most of his adult life," which seems to have become "much more active" in recent years.  Sentencing Hr'g Tr. 42, July 29, 2013.  The judge noted he saw little deterrent effect in this case and that "people like . . . Brown, who will continue to obtain these images . . . [are] creating a market or a demand

6

for [them]." *Id.* at 44.  While acknowledging Brown never had "crossed [the] line" between fantasy and action, and he possessed "a fraction" of the number of pornographic images he usually viewed, *id.* at 48, the judge also cited the government's evidence of Brown's interest in dead children, murder, and cannibalism, *id.* at 49-50.  The judge granted the government's motion for upward variance and found "the advisory [G]uideline[s] range of 78 to 97 months does not adequately represent the offense of conviction, nor satisfy the statutory purposes of sentencing as set forth in Section 3553(a) of Title 18." *Id.* at 52.  The judge sentenced Brown to 240 months of imprisonment, followed by a lifetime term of supervised release.

On appeal, Brown argues his sentence is substantively unreasonable, and the district judge's decision to impose an upward variance was based on his "unfounded assumption" he would physically harm a child in the future.  Appellant's Br. at 24-28.  Brown also contends the judge placed undue weight on the "need to protect the public," an error warranting reversal.  Appellant's Br. at 21-32.

## II. DISCUSSION

A. <u>Upward Variance</u>

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *Gall v. United States*, 552 U.S. 38, 41, 128 S. Ct. 586, 591

(2007); *United States v. King*, 751 F.3d 1268, 1281 (11th Cir. 2014) (per curiam).

The party challenging the sentence bears the burden of establishing the sentence is

unreasonable in light of the record and the factors in 18 U.S.C. § 3553(a).[2] *United*

*States v. Wayerski*, 624 F.3d 1342, 1353 (11th Cir. 2010). A district judge abuses

his discretion, when he (1) fails to afford consideration to relevant factors that

merited significant weight, (2) gives significant weight to an improper or irrelevant

factor, or (3) commits a clear error of judgment. *United States v. Irey*, 612 F.3d

1160, 1189 (11th Cir. 2010) (en banc). The weight to be accorded any given factor

is within the discretion of the sentencing judge. *United States v. Amedeo*, 487 F.3d

823, 832 (11th Cir. 2007).

In determining a sentence, the judge must calculate the correct Guidelines

range, consider the § 3553(a) factors, and make "an individualized assessment

based on the facts presented." *Gall*, 552 U.S. at 49-50, 128 S. Ct. at 596-97. The

judge should consider every defendant "as an individual and every case as a unique

study in the human failings that sometimes mitigate, *sometimes magnify*, the crime

and the punishment to ensue." *Id.* at 52, 128 S. Ct. at 598 (emphasis added). If the

judge decides, after "serious consideration," a sentence outside the applicable

Guidelines range is warranted, he must explain why the variance is appropriate and

---

[2] The relevant § 3553(a) factors include (1) the nature and circumstances of the crime as well as the history and characteristics of the defendant; (2) the need to reflect the seriousness of the crime, to promote respect for the law, and to provide just punishment for the crime; (3) the need for deterrence; and (4) the need to protect the public. 18 U.S.C. § 3553(a).

cite "sufficient justifications." *Id.* at 46, 128 S. Ct. at 594. Because of a variance, we may reverse only if we are left with "the definite and firm conviction that the district [judge] committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Shaw*, 560 F.3d 1230, 1238 (11th Cir. 2009) (internal quotation marks omitted).

The 240-month sentence in this case is a sentence well above the applicable Guidelines range of 78 to 97 months, but below the statutory maximum.[3] Brown has failed to meet his burden of showing the upward variance is unreasonable. The judge discussed four § 3553(a) factors, including (1) Brown's long history of obsession with young boys, (2) the seriousness of child-pornography crimes, (3) the futility of deterrence, and (4) the "self-evident" danger to society posed by Brown, as demonstrated in his "depraved" online chats and interest in the abduction, sexual molestation, murder, and cannibalization of children. Sentencing Hr'g Tr. at 40-52. There was no undue emphasis placed on any single § 3553(a) factor. While he did state the need to protect the public was "perhaps [the] most

---

[3] While the upward variance was substantial, Brown's sentence was still well below the maximum 30 years of imprisonment he could have received under the statute. *See* 18 U.S.C. § 2252A(b)(1), (2) (authorizing a maximum prison term of 20 years for receipt of child pornography and a maximum of 10 years for possession of child pornography); 18 U.S.C. § 3584 (authorizing a sentencing judge to impose prison terms "concurrently or consecutively," if multiple terms of imprisonment are imposed on a defendant at the same time); *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (comparing the statutory maximum with the sentence imposed in order to determine reasonableness).

important aspect," *id.* at 46, the judge clearly discussed the other § 3553(a) factors, and it is within a judge's discretion to afford one factor greater weight. *See Amedeo*, 487 F.3d at 832.

The judge reviewed the PSI, Brown's sentencing memorandum, and the government's motion for an upward variance with its attached exhibits. He explained his reasons for the variance. *See Gall*, 552 U.S. at 46, 50, 128 S. Ct. at 594, 597. While Brown presented evidence of statistics regarding recidivism rates and his voluntary psycho-sexual evaluation, this alone did not establish Brown would not be a danger to a community. The district judge explained:

> It used to be . . . [that] there [were] those who thought this was a victimless crime, just possessing an image on a computer. It's not. One has only to read a letter from an eight or ten-year-old person, a child who has been victimized and their child-like description of what they hoped would happen to the person who produced that image to understand and fully appreciate the damage that's done.
>
> So let's not forget in this discussion about necrophilia and mutilation and all of these terrible, terrible things that we have images of real-life child victims possessed by this defendant whose lives may never be returned to normalcy.

Sentencing Hr'g Tr. at 43-44. We agree. "It goes without saying that possession of child pornography is not a victimless crime. A child somewhere was used to produce the images downloaded by [defendant], in large part, because individuals like [defendant] exist to download the images." *United States v. Yuknavich*, 419 F.3d 1302, 1309 (11th Cir. 2005). "[R]eceiving and possessing child pornography

helps create a market for more pornography, encouraging the victimization of more children." *United States v. Turner*, 626 F.3d 566, 574 (11th Cir. 2010) (per curiam).

Despite Brown's argument, the judge did not factor in an "assumption" Brown would commit a violent act against a child in determining his sentence. *Cf. United States v. Dorvee*, 616 F.3d 174, 183-84 (2d Cir. 2010) (concluding the defendant's sentence was substantively unreasonable, because the district judge made an unsupported "apparent assumption" that the defendant was likely to molest a child sexually). The judge upwardly varied after considering Brown's "disgusting, depraved, disturbing [and] perverted" conduct, which "serve[s] to magnify the punishment . . . because it crosses all bounds of human decency." Sentencing Hr'g Tr. at 46, 51. Notably, the judge specified Brown would be sent to prison, because of the conduct to which he had pled guilty, not the content of the online chats.[4]

Given the evidence of Brown's expressed desire to kill and to cannibalize children, including multiple references to at least one child Brown seemed to

---

[4] The judge additionally noted:

> Nothing that I've seen here . . . suggests that you crossed that line between possessing and receiving versus distribution, other than forwarding an image or images of a young boy to some of these other individuals . . . . That is problematic. We don't know how that image could be used by someone like that.

Sentencing Hr'g Tr. at 48.

know, the judge's conclusion Brown posed a possible danger was not error.  *See Wayerski*, 624 F.3d at 1353-54 (concluding a sentence was reasonable, and the judge did not "improperly assume[]" the defendant would pose a risk to children after his release from prison, when the evidence included videotapes of neighborhood children, defendant's diaries, and online postings).  Along with the online chats, the evidence against Brown included numerous journals in which Brown documented his obsession with various young boys since 1978, a blow-up sex doll dressed as a little boy, and books about cannibalism and serial killers.  The judge clearly stated his reasons supporting the sentence; the justifications were sufficiently compelling to support the variance.  *See United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009) ( "Child sex crimes are among the most egregious and despicable of societal and criminal offenses, and courts have upheld lengthy sentences in these cases as substantively reasonable.").  Based on the totality of the circumstances, and giving due deference to the judge's determination that the § 3553(a) factors justified the upward variance, we conclude the district judge did not abuse his discretion.

B. Scrivener's Error

The judgment lists the statutory title and section of the crimes for Counts 4-8 as 18 U.S.C. § 2252(a)(2) and (b)(2).  This is a scrivener's error.  Consistent with the indictment, the counts should have been listed as 18 U.S.C. § 2252A(a)(2) and

(b)(1).  We reverse and remand for the limited purpose of correcting these typographical errors.  *United States v. Wimbush*, 103 F.3d 968, 970 (11th Cir. 1997) (per curiam).

### III. CONCLUSION

Brown's 240-month sentence, following his guilty plea to possession and receipt of child pornography, is AFFIRMED.  The case is REMANDED for the limited purpose of correcting the judgment for Counts 4-8 so it properly names the statutory title and section of the crimes as 18 U.S.C. § 2252A(a)(2) and (b)(1).

**AFFIRMED and REMANDED**