[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11336
Non-Argument Calendar

_____

D.C. Docket No. 6:15-cr-00165-PGB-TBS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GREGORY VAUGHN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 5, 2017)

Before ROSENBAUM, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Gregory Vaughn was sentenced to a total term of 324 months of
imprisonment after pleading guilty to offenses involving child pornography and

enticement of a minor.  Vaughn challenges the substantive reasonableness of his sentence, which represents an upward variance from the guideline range of 235 to 293 months of imprisonment.  Vaughn argues that the district court improperly based the upward variance on vague factual allegations which were already accounted for in his guideline range.  He also contends that the court failed to consider as mitigating factors his older age and lack of criminal history.  Finally, to preserve the issue for further review, Vaughn argues that the court's use of uncharged conduct to enhance his sentence violates the Sixth Amendment under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  After careful review, we affirm.

## I.

Vaughn's convictions in this case arise out of his interactions with a minor, whom we refer to as "AK."  Vaughn, who was a high-school psychology teacher, met AK through an artistic social networking website at some point in 2014.  AK was fourteen at the time.

Vaughn and AK's discussions started out as innocuous in nature but over time became sexually explicit.  Vaughn flattered AK and asked her to send him photographs of herself, first in clothing.  Later on, Vaughn convinced AK, who had told Vaughn her age, to send nude photos.  When AK was fifteen, she sent Vaughn a close-up photograph of her vagina.  In exchange for photographs, Vaughn sent

2

AK money, books, candy, clothes, underwear (panties), and makeup.[1]  Vaughn sent nude photos of himself to AK.  Vaughn and AK also engaged in sexually explicit role-play conversations through email.

Additionally, Vaughn enticed AK to engage in sexually explicit conduct. They engaged in real-time Skype sessions where they would masturbate at the same time.  In addition, Vaughn asked AK to masturbate in panties he sent her and then return them to him.  She did so.  Vaughn, in turn, ejaculated into the panties and sent them back to AK.  Vaughn also sent AK videos in which he pretended to have sex with her.

AK's mother reported the relationship to police in April 2015 after she discovered nude photos of AK and Vaughn on her home computer.  When investigators interviewed Vaughn about his relationship with AK, he admitted to participating in sexual role play, but he claimed that it was part of the therapy to make AK feel good about herself.  Vaughn stated that he had counseled many students who confided in him about personal issues.

---

[1] At some point, Vaughn emailed AK the following summary, which outlined what payment she would receive based on the type of photo she sent:

> Regular headshots (Basically, that's just your face) or just a close-up of your lips, $1 each.
> Torso with a shirt on, or just your lower body with shorts or a short skirt, $2.
> Torso, tight shirt or tank or cami, no bra; or shorts with your legs open, $3.  (Get hose [sic] nipples sticking out!)
> Full cleavage, or button-down shirt open all the way to show your cleavage; bra and panties; or upskirt showing your panties, $4.
> Open-legged panties, $5.
> Sexier than that, more $.

A search of Vaughn's cell phone and computer revealed pornographic images of AK and other children, including another minor Vaughn had met on the same art website. Agents interviewed the other minor, who revealed she had also been groomed and enticed into producing child pornography by Vaughn.

Vaughn was indicted on three counts: enticement of a minor to engage in the production of child pornography, in violation of 18 U.S.C. § 2422(b) (Count 1); production of child pornography, in violation of 18 U.S.C. § 2251(a) (Count 2); and receipt and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B) (Count 3). Without a plea agreement, Vaughn pled guilty to all three counts.

Before sentencing, the Probation Office prepared an initial presentence investigation report ("PSR"), which calculated a guideline range of 135 to 168 months of imprisonment based on a total offense level of 33 and a criminal history category of I. The government objected to the PSR and requested the addition of a five-level enhancement for engaging in a pattern of activity involving prohibited sexual conduct, pursuant to U.S.S.G. § 4B1.5(b). According to the government, Vaughn groomed a different minor, whom we refer to as "AS," and similarly enticed her to produce child pornography for him. The Probation Office added this enhancement and issued a revised PSR recommending a guideline range of 235 to 293 months of imprisonment. Neither party filed objections to the revised PSR.

4

Vaughn filed a sentencing memorandum in which he requested a downward variance to 15 years of imprisonment, the minimum statutory penalty for Count 2 and the highest mandatory minimum sentence applicable to his offenses. Vaughn emphasized his age (58 at the time), lack of criminal history, acceptance of responsibility, and strong family support, among other factors.

In a response memorandum, the government requested a sentencing within the guideline range. As exhibits to the memo, the government submitted a victim-impact statement from AK's family, emails between Vaughn and AK, emails between Vaughn and AS, and a 1999 Federal Bureau of Investigation ("FBI") report of an investigation regarding Vaughn's contacts with a 16-year-old girl, whom we refer to as "M." The government summarized the 1999 FBI report as follows:

> As early as 1999, the [FBI] discovered that the defendant had engaged in similar grooming behavior with [M]. According to the defendant, M had been sexually abused as a child. The defendant, knowing this, took advantage of his position as a teacher and M's vulnerable state of mind to befriend her. The defendant then coordinated to travel to meet the child without involving her parents. The defendant told the FBI agents that he only intended to mentor and assist M. The defendant also said that on one occasion M had hinted at having sex with the defendant.

At sentencing, the district court first heard from AK's father, who read a written statement about the severe and long-lasting damage Vaughn had inflicted

5

on his daughter.  According to AK's father, AK had been in counseling since learning she had been victimized by Vaughn, and she suffered from post-traumatic stress disorders, was racked by feelings of shame, guilt, regret, and self-doubt, and had trouble trusting others, among other issues.

Vaughn argued for a sentence at the mandatory minimum of fifteen years' imprisonment, noting that, since he was 59 years old at the time of sentencing, he would be in his 70s at a minimum when released, if he even made it that long.  He contended that a fifteen-year sentence was "very, very lengthy" and would be sufficient to serve the purposes of deterrence and protection of the community.

The government requested a sentence at the high end of the guideline range, highlighting Vaughn's "pattern" of using his position of trust as a teacher to reach out to minors, befriend them, groom them, and then "entice[] them into doing things that they wouldn't otherwise do."

Vaughn personally addressed the court.  He explained that he was drawn to those who are troubled and had spent his life trying to lift them up.  He provided as examples his creation of a mentoring program for at-risk kids and the fact that he was an adviser to an anti-bullying club.  He disputed the government's assertion that he had a pattern of sexual misconduct, explaining that he had taught thousands of students and had never tried anything like his conduct in this case with them.  Addressing the allegations regarding AS, Vaughn stated that she had told him she

6

was 19, and he claimed that she was the one who had manipulated him.  He also apologized to AK's father and expressed remorse for his conduct.

The sentencing judge, after providing a summary of the statutory sentencing factors under 18 U.S.C. § 3553(a), addressed the "factors that have resonated with [him]."  The judge first discussed aspects of the offense.  The judge, noting that he had read "each and every word of each and every e-mail" between Vaughn and AK, found these emails showed a "very conscious and calculating plan to gain the trust of this young girl."  Vaughn, the judge elaborated, developed trust with AK by flattery and appealing to her sense of worth as a person, and then gradually exploited that trust over time to get AK to send him photographs, first clothed and eventually pornographic.  In addition, Vaughn led AK to engage in sexual role playing through email conservations, which became "more and more pornographic over time," and also engaged in real-time masturbation with AK over Skype.  Throughout this time, the judge noted, Vaughn continued to provide AK with gifts and flattery.

Next the judge, referencing letters from AK's parents and her counselor, highlighted the devastating impact Vaughn's conduct had and will continue to have on AK:

> She has depression.  She's been involved in cutting, stomach ulcers, stomach pain.  She has immense problems in her daily life.  She has longstanding effects on future relationships.  She's in therapy to deal with her

7

embarrassment, her shame, her humiliation, which you inflicted upon her. You brought that to her. She did not bring that to you. She has PTSD, recurrent and distressing and intrusive memories, nightmares, hyper vigilance, exaggerated startle response, and sleep disturbances.

She suffers from continuing post-traumatic stress disorder, which you brought to her. That is of your design. She has anxiety and fear causing her impairment in social and academic settings. Her schooling has suffered. Her interpersonal relationships have suffered, and will likely suffer for her lifetime.

The judge also was troubled by Vaughn's "pattern of behavior," noting that Vaughn was engaging in similar conduct with both AS and AK at around the same time in 2014. And "this pattern [was] reflected in 1999," the judge stated, when Vaughn planned to go meet M, who had hinted at having a sexual relationship with him. Vaughn had met M on a tutor-student website, "utilizing this process to try to encourage some sense of trust." Thus, the judge observed, all three instances began with Vaughn meeting victims on websites designed to deal with tutoring or to be a place for the exchange of art, and then using and abusing his position of trust as a teacher or mentor.

Finally, the judge found that Vaughn had not genuinely accepted responsibility for his conduct and that his allocution was disingenuous and an attempt to manipulate the court. The judge noted that Vaughn had tried to blame AS for manipulating him. And, more generally, the judge highlighted the sharp

8

contrast between Vaughn's actions in this case and his claims that he had been trying to improve the lives of others.

The sentencing judge, finding that Vaughn posed a "significant threat to society" and that there was a need to deter him from future conduct, told Vaughn that the guideline range was "inadequate to adequately address the risk that you present to society and the dangers that you present, and it would underrepresent the seriousness of your offense conduct." The judge sentenced Vaughn to a total term of 324 months (27 years) of imprisonment. This total term consisted of 324 months on Counts 1 and 2, 240 months on Count 3 (the statutory maximum for that offense), with all terms to run concurrently with each other.

After the sentence was pronounced, Vaughn objected to the judge's reliance on "the 1999 offense" as an aggravating factor. Vaughn argued that the facts of that incident were vague, that he was never charged with any offense, and that the incident should not have been considered by the judge in determining an appropriate sentence. Vaughn now appeals.

**II**.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *United States v. Brown*, 772 F.3d 1262, 1266 (11th Cir. 2014). The district court must impose a procedurally and substantively reasonable sense. *United States v. Gonzalez*, 550 F.3d 1319, 1323 (11th Cir. 2008). Vaughn does not

challenge the procedural reasonableness of his sentence.  Turning to substantive reasonableness, our review "involves examining the totality of the circumstances, including an inquiry into whether the statutory factors in § 3553(a) support the sentence in question."  *Id.* at 1324.

The district court is tasked with imposing a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of sentencing listed in § 3553(a)(2).  18 U.S.C. § 3553(a).  These purposes include retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence ("to afford adequate deterrence to criminal conduct"), and incapacitation ("to protect the public from further crimes of the defendant").  *See id.* § 3553(a)(2)(A)–(C).  The court must also consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, the applicable guideline range, any relevant policy statements from the Sentencing Commission, and the need to avoid unwarranted sentencing disparities.  *See id.* § 3553(a)(1)–(7).

The court must consider all of the § 3553(a) factors, but it may, in its discretion, give greater weight to some factors over others.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).  Moreover, "[i]n assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and

10

should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts." *Id.* at 1260.

If the court chooses to vary from the guideline range after weighing the § 3553(a) factors, we "may not presume that [the] sentence . . . is unreasonable and must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted). Nevertheless, a sentencing court may abuse its discretion by (1) failing to afford consideration to relevant factors that were due significant weight; (2) giving significant weight to an improper or irrelevant factor; or (3) committing a clear error of judgment in weighing the proper factors. *Id.* at 1189. The party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable "in light of the entire record, the § 3553(a) factors, and the substantial deference afforded to sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256.

On appeal, Vaughn argues that the district court abused its discretion and imposed a substantively unreasonable sentence by giving significant weight to an improper factor: the 1999 incident involving M. According to Vaughn, his alleged "pattern" of similar sexual activity was already accounted for in his guideline range through the court's application of a five-level pattern enhancement, U.S.S.G.

11

§ 4B1.5(b).  By basing a substantial variance on this same conduct, Vaughn reasons, the court gave "significant weight to an improper factor (the uncharged conduct) and insufficient consideration to the guidelines."  And the district court compounded this error, Vaughn asserts, by failing to address or give proper weight to significant mitigating factors, such as his age and lack of criminal history.

Here, Vaughn has not shown that his total sentence of 324 months of imprisonment is substantively unreasonable.  We disagree with Vaughn's contention that the district court improperly relied on the 1999 incident involving M in its decision to vary upward.  Even if the 1999 incident was already accounted for in his guideline range, "[t]his Court has held that a district court can rely on factors in imposing a variance that it had already considered in imposing an enhancement."  *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010); *see United States v. Amedeo*, 487 F.3d 823, 833–34 (11th Cir. 2007) (noting that "exceptional circumstances" in that case justified such reliance).  Indeed, Congress has directed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661.

The 1999 incident involving M was relevant to the § 3553(a) analysis, including, most obviously, the "history and characteristics of the defendant."  *See*

12

18 U.S.C. § 3553(a)(1).  Although the allegations regarding the 1999 incident did not reveal whether Vaughn's discussions with M led to the production of child pornography, as it did with AS and AK, Vaughn's interactions with M shared sufficient factual similarities with his interactions with AS and AK that it was reasonable for the court to be troubled by this older incident, notwithstanding the application of the pattern enhancement.  *See Rosales-Bruno*, 789 F.3d at 1260 ("In assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts.").  Moreover, the 1999 incident was not directly accounted for in the § 4B1.5(b) pattern enhancement, which was based on Vaughn's conduct involving AS.[2]

Furthermore, the record does not support Vaughn's positions that the sentencing court placed undue weight on the 1999 incident involving M, gave insufficient consideration to the guideline range, or failed to consider Vaughn's age and lack of criminal record.  The court heard the parties' arguments, reviewed their submissions and the revised PSR, and articulated that it had considered the applicable guideline range and the § 3553(a) factors.  The court discussed at length

---

[2] It does not appear that the 1999 incident could have been included in the pattern enhancement.  For the pattern enhancement under § 4B1.5(b) to apply, the defendant must have engaged in "prohibited sexual conduct" with a minor on "at least two separate occasions." U.S.S.G. § 4B1.5 cmt. n.4(B)(i).  The term "prohibited sexual conduct" is defined in the commentary and includes, as relevant here, the production of child pornography. *See id.* § 4B1.5 cmt. n.4(A).  There is no evidence that Vaughn's interactions with M led to the production of child pornography.

aspects of the case that resonated with the court, including the seriousness of Vaughn's offense conduct, such as the protracted nature of the conduct and Vaughn's abuse of a position of trust; the severe and long-lasting harm to AK; his "pattern of behavior" involving AK, AS, and M; and his failure to take responsibility for his conduct.  Based on these multiple factors, the court concluded that a guideline-range sentence would be inadequate to address the risk Vaughn posed to society and would underrepresent the seriousness of his offense conduct.

Given the deference afforded to sentencing courts in weighing the § 3553(a) factors, we cannot say that the court abused its discretion by failing to afford consideration to relevant factors that were due significant weight, giving significant weight to an improper or irrelevant factor, or committing a clear error of judgment in weighing the proper factors.  *See Irey*, 612 F.3d at 1189.  The 1999 incident was just one data point in the court's sentencing calculus, and the court was within its discretion to give the multiple aggravating factors, which Vaughn largely does not contest on appeal, greater weight than Vaughn's age or lack of a criminal record and to conclude that the § 3553(a) factors as a whole justified the variance from the guideline range.  *See id.* at 1187; *Rosales-Bruno*, 789 F.3d at 1254–55.

We have recognized that "[s]exual crimes against minors cause substantial and long-lasting harm," which is borne out in this case by the evidence before the

court at sentencing. *United States v. Mozie*, 752 F.3d 1271, 1289 (11th Cir. 2014) ("Simply stated, sexual abuse is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional, and sexual development in ways which no just or humane society can tolerate." (internal quotation marks omitted)). In addition, "we have recognized that child sex crimes are among the most egregious and despicable of societal and criminal offenses." *Id.* (alteration adopted) (internal quotation marks omitted). "For that reason, we have repeatedly upheld severe sentences in these cases." *Id.* (internal quotation marks omitted).

Under the totality of the circumstances, Vaughn has not shown that his total sentence of 324 months of imprisonment, though severe, is substantively unreasonable. Accordingly, we affirm his sentence.

### III.

Finally, Vaughn argues the district court's use of uncharged conduct and judge-found facts to significantly increase his sentence violated the Sixth Amendment. He raises this issue solely for preservation purposes, however, acknowledging that his sentence "is below his permissible statutory maximum and therefore constitutional under current Supreme Court precedent." *See United States v. Rodriguez,* 279 F.3d 947, 950 (11th Cir. 2002). Accordingly, under current precedent, the district court did not err.

**AFFIRMED.**

15