[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13097

Non-Argument Calendar

_____

3:20-cr-00072-TJC-MCR-2
3:20-cr-00244-TJC-JRK-1
UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

TERRY LAVON SHUMAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket Nos. 3:20-cr-00072-TJC-MCR-2,
3:20-cr-00144-TJC-JRK-1

———————————

Before GRANT, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Terry Shuman pleaded guilty to two counts of possessing a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g)(1). Shuman argues his 100-month sentence is substantively unreasonable and that section 922(g)(1) is unconstitutional under the Commerce Clause. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2019, a shootout in Jacksonville left Jose Miranda lying dead on the ground. Surveillance footage did not show who started the gunfight, but it did show Mr. Miranda trading shots with two men who escaped in a white Honda. Police found the Honda occupied by Evonte Glover, who had been shot several times, and a witness told them that another man had recently run from the vehicle and had thrown a silver object to the side of the road. The officers found Shuman fleeing from the scene—with the Honda key in his pocket—and the pistol he threw as he fled.

After the November shootout, a federal grand jury indicted Shuman for possessing a firearm as a convicted felon—he had been convicted of armed robbery in 2009—and a warrant issued for his arrest.

In August 2020, officers attempted to pull over Shuman's vehicle to arrest him on the warrant. Shuman fled in his vehicle until he ran off the road and crashed. He continued to run away on foot, carrying a white backpack, until he was apprehended. In the backpack Shuman had a loaded .40-caliber pistol with the serial numbers removed. The grand jury indicted Shuman in a separate case for possessing a firearm as a convicted felon during his August 2020 arrest.

Shuman pleaded guilty in both cases. His presentencing investigation report assigned him an offense level of 23, which accounted for both aggravating characteristics like the filed-off serial numbers and mitigating characteristics like his acceptance of responsibility. It also assigned him a category II criminal history, based on his 2009 armed-robbery conviction. In that case, Shuman carjacked a woman at gunpoint while the woman was holding her granddaughter, then fled from police who were trying to apprehend him. Shuman's guideline range was thus 51 to 63 months' imprisonment.

The government sought an upward departure (1) based on Mr. Miranda's death and (2) because the guidelines did not adequately reflect the seriousness of Shuman's armed robbery conviction. And the government alternatively asked the court to vary upward from the guideline range and impose a ten-year sentence. Schuman opposed the departure and variance because the evidence did not show he was responsible for Mr. Miranda's death, his

prior offense occurred when he was a minor, and he had been trying to improve himself by starting a nonprofit.

Before the district court announced Shuman's sentence, it explained that it was going to sentence Shuman "only according to the charge that [he was] [t]here for" and not for the shooting of Mr. Miranda.  It then reiterated that it was "only sentencing [Shuman] for the crimes [he was] convicted of," not others he may have committed.  Still, the district court categorized Shuman's case on the serious end of the "spectrum" of felon-in-possession cases, because Shuman had not merely possessed a firearm but had used it in a shootout that left Mr. Miranda dead and Glover shot, in a residential area where others could also have been victims of a stray bullet.  The district court said that it did not assume Shuman had fired first, but it stated that he was not allowed to have the gun and should not have been in the situation that led to the shootout in the first place.

The district court then considered Shuman's history and characteristics, his acceptance of responsibility and work for a nonprofit organization, his "bad background[] and difficulties," the need for deterrence and protecting the public, the seriousness of the offense, promoting respect for the law, and providing just punishment.  It also found that Shuman's flight from police and possession of a different firearm during the second arrest were aggravating factors, because they showed he hadn't learned from the November shootout the dangers of illegally carrying a firearm.

The district court varied upwards from the guideline range and imposed a 100-month prison sentence.  In its statement of reasons, the district court listed five justifications for the variance:  (1) that the "[f]irearm was used in a shootout that resulted in the death of another," (2) Shuman's criminal history, (3) the need to reflect the seriousness of the offense, (4) the need to afford deterrence, and (5) the need to avoid unwarranted sentencing disparities.  Shuman timely appealed.

## STANDARD OF REVIEW

We review the substantive reasonableness of a sentence for an abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  Where the defendant raises a constitutional challenge to his conviction that he did not raise before the district court, we review that challenge under a plain error standard.  *United States v. Madden*, 733 F.3d 1314, 1320 (11th Cir. 2013).

## DISCUSSION

Shuman raises two issues on appeal.  First, he argues that his sentence is substantively unreasonable because the district court double-counted his criminal history and improperly found him culpable for Miranda's death.  Second, he contends that the felon-in-possession statute, 18 U.S.C. section 922(g)(1), is unconstitutional under the Commerce Clause, U.S. Const. Art. I, section 8, cl. 3.  We address each in turn.

A.

The district court varied upward from the guideline range and sentenced Shuman to 100 months' imprisonment. Although the guidelines are not mandatory, a district court must offer "sufficient justifications" for a variance. *United States v. Brown*, 772 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Gall*, 552 U.S. at 46). A district court abuses its discretion in varying upward when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir 2010) (en banc) (quoting *United States v. Campa*, 459 F.3d 1121, 1174 (11th Cir. 2006)). However, a district court need not "articulate [its] findings and reasoning in great detail," so long as "'the context and record' indicate[] the reasoning behind [its] decision." *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 359 (2007)).

Here, the district court gave sufficient justifications for the variance. It discussed several factors that placed Shuman's conduct at the more serious end of the "spectrum" of felon-in-possession cases, including that: Shuman illegally carried a firearm into a situation that became a deadly gunfight; the shootout occurred in a residential area and posed a danger to innocent passersby; Shuman fled from police; and Shuman's previous prison sentence for a violent offense had not deterred him from misconduct. And the district court considered that Shuman carried a separate firearm at the

time of his second arrest, so the gunfight and Mr. Miranda's death evidently did not lead him to reconsider illegally carrying a firearm.

Shuman argues that the district court improperly found him "somehow culpable" for Mr. Miranda's death and "improperly relied on" it to vary upward from the guidelines. But the record contradicts Shuman's argument. The district court stated that it was sentencing Shuman "only according to the charge that [he was] [t]here for" and not for homicide. It said that it didn't assume Shuman was culpable for Mr. Miranda's death and that it was punishing him for "the crime of felon in possession, not for the death of Mr. Miranda, per se." And it disclaimed any finding that Shuman had initiated the shooting; it clarified that his felon-in-possession offense was more severe because he was not allowed to have a gun and shouldn't have been in the situation that led to Mr. Miranda's death.

Shuman also contends that the district court abused its discretion by using his criminal history as a justification for the variance, since his criminal history was already reflected in his offense level and criminal history score. But the district court gave a reasoned basis for considering Shuman's prior conviction in varying upward. The seriousness of the prior offense—Shuman carjacked a grandmother at gunpoint while she held her granddaughter, then tried to escape from police in a car chase—warranted some additional consideration in the ultimate sentence. A "district court may vary upward based on conduct that was already considered in calculating the guideline range." *United States v. Taylor*, 997 F.3d

1348, 1355 (11th Cir. 2021).  The district court was free to exercise its "sound discretion" in weighing Shuman's criminal history to determine his sentence, *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (citation omitted), and we do not find that the district court abused its discretion here.

## B.

Shuman's second argument is that the federal felon-in-possession statute, 18 U.S.C. section 922(g), is unconstitutional under the Commerce Clause.  He argues that the statute's ban on "possess[ing] in or affecting commerce, any firearm" is unconstitutional under *United States v. Lopez*, 514 U.S. 549, 559 (1995).

As Shuman recognizes, our precedent forecloses his argument.  We have already held that *Lopez* did not invalidate section 922(g) under the Commerce Clause.  *See United States v. McAllister*, 77 F.3d 387, 390 (11th Cir. 1996) ("Nothing in *Lopez* suggests that the "minimal nexus" test should be changed.  Because the government demonstrated that the firearm possessed by McAllister previously had travelled in interstate commerce, the statute is not unconstitutional as applied to him.").  The district court thus did not commit plain error.  *See United States v. Olano*, 507 U.S. 725, 734 (explaining that an error is not plain "unless the error is clear under current law").

**AFFIRMED.**