**NOT FOR PUBLICATION**

# In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10282
Non-Argument Calendar
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

OREL VALDESPINO FERNANDEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:24-cr-20318-RKA-1

_____

Before Newsom, Grant, and Brasher, Circuit Judges.

PER CURIAM:

Orel Valdespino assaulted a correctional officer while incarcerated at FDC Miami. After a two-day jury trial, he was convicted of one count of forcible assault against a federal officer.

For the first time on appeal, he claims that the government violated due process by cross-examining him about his prior felony conviction, the veracity of other witnesses, and the dangers inherent in a prison environment. Because there was no plain error, we affirm his conviction.[1]

## I.

Orel Valdespino was incarcerated at FDC Miami pending trial on money laundering charges. About a week before he pleaded guilty, Valdespino's housing unit was placed on temporary lockdown in response to a stabbing. As Lieutenant Jacob Harper and Officer Jessica Isma made the rounds, Harper noticed from outside Valdespino's cell that he was shirtless. Harper ordered Valdespino to put on a shirt because there was a female officer on the floor. Valdespino did not comply.

Upon realizing that Valdespino only understood Spanish, Harper recruited another inmate—Luis Tejada—to translate. After Isma unlocked Valdespino's cell, Harper stepped inside and stretched out his arm to maintain a safe distance.[2] While Harper had his head turned to Tejada, Valdespino swatted Harper's arm and punched him in the jaw. Valdespino then pushed him against

---

[1] The amended judgment document states that Valdespino pleaded guilty to Count One before a magistrate judge. This is a scrivener's error: he was found guilty by a jury after trial. We remand the case for the limited purpose of correcting this error. *See United States v. Brown*, 772 F.3d 1262, 1268 (11th Cir. 2014).

[2] On the stand, Harper could not recall whether he made contract with Valdespino. But Tejada testified that Harper gave Valdespino "a little pat" on the chest.

the wall, before pummeling him in the face. Isma intervened with pepper spray. In response to a call for backup, Captain Justin Culver helped Harper restrain Valdespino, ending the assault. According to the paramedic, Valdespino came away with "[v]ery minor injuries": eye irritation from the pepper spray, scratches on his face, and some blood on his nose. But Harper was not so lucky. In addition to swelling in his left ear and bruising on his right arm, he suffered a misaligned jaw and a torn pectoral tendon. He has been unable to return to work due to his pain and lack of mobility.

Valdespino was charged with one count of forcibly assaulting a federal officer. *See* 18 U.S.C. § 111. At trial, the government called Harper, Isma, Culver, and Tejada. They all recounted Valdespino's assault. Valdespino took the stand as well, but told a very different story: Harper instigated the altercation by pushing Valdespino against the wall before putting him in a chokehold. Feeling like his "neck was about to break," Valdespino punched Harper in self-defense. The jury did not buy it, however, and returned a guilty verdict after deliberating for less than two hours. As the district judge explained at sentencing, "it was obvious to everyone in the courtroom that [Valdespino] was lying, and that his testimony was completely belied by most of the other witnesses in the case."

Valdespino brings this appeal to challenge his conviction, arguing—for the first time—that the government engaged in prosecutorial misconduct by asking him inappropriate questions on cross-examination.

## II.

"Constitutional objections not raised before the district court are reviewed only for plain error." *United States v. Moriarty*, 429 F.3d 1012, 1018–19 (11th Cir. 2005). The defendant bears the burden of showing that the error seriously affected "the fairness, integrity or public reputation of judicial proceedings" and impaired "substantial rights." *Id*. at 1019 (quotation omitted).

## III.

"Prosecutorial misconduct can be a basis for relief if it so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Land v. Allen*, 573 F.3d 1211, 1219 (11th Cir. 2009) (quotation omitted). Valdespino challenges the government's inquiry into (1) the facts underlying his arrest and money laundering conviction, (2) his opinion on the veracity of other witnesses, and (3) the dangers that prisoners pose to correctional officers. None amount to reversible plain error.

## A.

In an unopposed motion in limine, the government stated that it would introduce Valdespino's money laundering conviction for impeachment purposes should he choose to testify. *See* Fed. R. Evid. 609(a)(1)(B). The government also requested permission to introduce evidence "that the Defendant had been at FDC since January 2024," though it stated (in a footnote) that it "does not seek to introduce anything about the circumstances of why the Defendant was at FDC beyond the bare fact of his being incarcerated." The district court granted this request.

At trial, the government asked Valdespino to confirm that his money laundering conviction was predicated on his participation in a conspiracy to sell "illegal HIV medication"—a venture that yielded over $7.2 million in sales. Valdespino conceded his role in the conspiracy but denied any knowledge that his coconspirators used "falsified product tracing information for these drugs." To rebut that testimony, the government introduced Valdespino's own sworn statement that he knew that his coconspirators "either included falsified product tracing information to conceal the source of the diverted medication or failed to include it altogether."

Though he did not object at trial, Valdespino now claims that the government conducted a "surprise smear campaign" by delving into the details of his prior conviction. Specifically, this line of questioning "virtually ensured that Valdespino appeared less-than-forthcoming" about his criminal record. We disagree.

Even assuming for argument's sake that the details of his money laundering conviction were inadmissible, Valdespino cannot establish that the inquiry was "fundamentally unfair." *Romano v. Oklahoma*, 512 U.S. 1, 14 (1994). It was not the government's questioning that made Valdespino appear "less-than-forthcoming" before the jury; it was his own decision to falsely disclaim knowledge of his coconspirators' deceitful activities. Rather than object to what he now claims to be an improper line of inquiry, Valdespino attempted to downplay his culpability. A "defendant's obligation to testify truthfully is fully binding on him

when he is cross-examined." *United States v. Havens*, 446 U.S. 620, 627 (1980). When Valdespino fell short on that obligation, the government confronted him with his prior inconsistent statement.[3] Valdespino has himself—not the government—to blame for having been caught in a contradiction. In any event, "the lack of any contemporaneous objection" weighs against a finding of prosecutorial misconduct. *Romine v. Head*, 253 F.3d 1349, 1370 (11th Cir. 2001).

Valdespino also claims that the government inappropriately asked him whether he was arrested at an airport while trying to flee the country. But this inquiry "provides essentially background facts that shed light" and give context to evidence that Valdespino was caught carrying counterfeit permanent resident and Social Security cards when he was arrested. *See* 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:2 (4th ed. 2025). As Valdespino concedes on appeal, evidence that he carried and used forged government documents is admissible for impeachment

---

[3] In the government's view, Rule 404(b) is inapplicable because the details of Valdespino's money laundering activities were introduced for impeachment. This argument misunderstands Rule 404(b)'s text and structure. Under that Rule, "[e]vidence of any other crime, wrong, or act" is inadmissible to prove propensity but admissible "for another purpose." The government concedes (as it must) that Valdespino's money laundering constitutes "a prior bad act"—which is, by definition, some "other crime, wrong, or act." Fed. R. Evid. 404(b)(1). Under Rule 404(b)(2), that evidence may be admitted for non-propensity purposes, including impeachment. *See United States v. Bradley*, 644 F.3d 1213, 1273 (11th Cir. 2011). So Rule 404(b) applies but does not require exclusion.

25-10282          Opinion of the Court          7

purposes under Rule 608(b).[4]  *See United States v. Cohen*, 888 F.2d 770, 775–76 (11th Cir. 1989).  We see no reversible plain error.

## B.

On cross, the government also asked Valdespino whether "[e]very other witness" was "lying" in their account of what happened between him and Harper.  Now confessing error, the government admits that it was improper to "prod a defendant to accuse another witness of lying." *See United States v. Rivera*, 780 F.3d 1084, 1096 (11th Cir. 2015).

That said, "this type of error will often be harmless": the problem lies "mainly in its form, not its substance." *Id.* at 1099 & n.5.  Valdespino cannot show that "but for the comments, the outcome of the trial would have been different." *Id.* at 1096.  In fact, Valdespino's defense theory was that Harper had covered up "what really happened" because Harper "probably would have been, not just perhaps demoted, but fired" had he told the truth. While improper, the government's line of questioning did not frustrate Valdespino's presentation of his defense.

## C.

Last, the government asked Valdespino to confirm that "inmates are considered dangerous, that they're considered people

---

[4] It is not clear from the record whether the government provided "reasonable notice" of its intent to impeach Valdespino with evidence of his prior possession of counterfeit documents.  *See* Fed. R. Evid. 404(b)(3)(A).  But Valdespino waived the issue by conceding that the evidence was properly admitted.

who need to be kept safe from." Even though he did not object at trial, Valdespino now challenges that question as inflammatory. We disagree. The government did not overstep by discussing the context in which the altercation took place—in a "detention facility" which is "a unique place fraught with serious security dangers." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). And regardless, there is no basis to infer that this brief and commonsense remark had "a significant impact on the jury's deliberations." *Donnelly v. DeChristoforo*, 416 U.S. 637, 646 (1974).

⋆    ⋆    ⋆

While we appreciate a defense counsel's duty to zealously represent the client, especially in criminal cases, accusations of prosecutorial misconduct are serious—not to be lodged lightly. It "is not enough that the prosecutors' remarks were undesirable" or even mistaken. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quotation omitted). Unpreserved run-of-the-mill evidentiary issues do not cut it either. Here, we have no difficulty concluding that Valdespino "received a fundamentally fair trial." *United States v. Pendergrass*, 995 F.3d 858, 881 (11th Cir. 2021). We **AFFIRM** the conviction and **REMAND** for the limited purpose of correcting a typographical error in the amended judgment.