[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15406
Non-Argument Calendar
_____

D.C. Docket No. 6:15-cr-00121-PGB-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ASHLEY ANDERS BISHOP,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 3, 2017)

Before TJOFLAT, WILLIAM PRYOR, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Ashley Bishop appeals his convictions and 280-month total sentence of imprisonment after being found guilty of one count of possession of child pornography and four counts of receipt of child pornography.  On appeal, Bishop argues that the district court erred or abused its discretion in four main ways: (1) denying his motion to suppress evidence of child pornography obtained from his cell phones; (2) refusing his request to ask prospective jurors a specific question about whether they could be impartial given his prior conviction for a child sex offense; (3) denying his motion *in limine* to preclude the government from telling the jury the name and nature of his prior state conviction for attempted lewd and lascivious molestation of a minor; and (4) imposing a substantively unreasonable total sentence of 280 months of imprisonment, which was 100 months above the guideline range of 180 months.  After a careful review of the record and consideration of the parties' briefs, we affirm.

## I.  Background

### A.  *Background Facts and Offense Conduct*[1]

In 2001, a Florida state court sentenced Bishop to serve fifteen years in prison to be followed by fifteen years of supervised probation after he was found guilty of attempted lewd and lascivious molestation of a minor less than twelve

---

[1]  These facts are taken primarily from the hearing on Bishop's motion to suppress.

years of age.  Bishop served around twelve years in prison before starting his term of probation in September 2012.

As part of his probation sentence, Bishop was subject to both standard conditions and sex-offender specific conditions.  Among the standard conditions, Bishop was required to "submit to a reasonable search without a warrant by the Probation Officer of your person, effects, residence or business premises or vehicle for alcoholic beverages, controlled substances, weapons or firearms."  The special conditions for sex offenders required him to "submit to a warrantless search by the probation officer of your person, residence or vehicle," and they prohibited him from viewing, owning, or possessing "any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services" that were relevant to his "deviant behavior pattern."  Bishop also was required to report, among other information, any email addresses or other "internet identifiers" he used.

In or around August 2014, Bishop violated the conditions of his probation by using cocaine.  He was sentenced to 90 days in jail to be followed by one year of "community control" and a new 13-year term of probation. Community control is a form of intensive supervised custody similar to house arrest.  Bishop was subject to electronic GPS monitoring while on community control.

3

In January 2015, a state court issued a warrant for Bishop's arrest for violating the monitoring conditions of his community control. Nancy Paulin, Bishop's probation officer at the time, contacted Deputy Sheriff James Montgomery of the Orange County Sheriff's Office ("OCSO") to ask him for help in arresting Bishop. Montgomery, in turn, asked Henry Amole, an OCSO Fugitive Agent, to execute the arrest warrant.

Amole went to Bishop's home early in the morning on February 4, 2015. Bishop was not fully dressed when Amole arrived, so Amole accompanied Bishop to his bedroom to allow him to finish dressing. In Bishop's bedroom, Amole noticed Bishop nervously grab and unplug an iPhone from a nightstand by the bed. Bishop handed over his iPhone when he was booked into the jail.

After Bishop's arrest, Amole updated Montgomery and relayed that Bishop had an iPhone and appeared to be very nervous about it. Amole also told Montgomery that, in his experience, compliant sex offenders generally did not have smartphones capable of internet access. Amole asked Montgomery to look into whether Bishop's potentially unrestricted access to the internet violated the conditions of his probation.

Montgomery, in turn, informed Paulin about the iPhone. Paulin was not aware of the phone, and she told Montgomery that Bishop, as a sex offender, was not allowed to access the internet. Montgomery asked for Paulin's permission to

4

search the iPhone, which she granted based on her authority as his probation officer. Paulin told Montgomery to conduct a search of the phone for evidence of a probation violation. Paulin's request was not out of the ordinary. Probation often asked law enforcement for help in arresting probationers and conducting searches of electronic devices.

Montgomery obtained Bishop's iPhone from the jail and placed it in storage at the OSCO. Even though he had received Paulin's permission to conduct a warrantless search of the phone, Montgomery independently decided to apply for a search warrant. In applying for the warrant, Montgomery submitted an affidavit which gave the following facts: (a) Bishop was a convicted sex offender required by Florida law to register any email addresses he used; (b) he had an iPhone in his possession; (c) iPhones are used to access the internet; (d) iPhones users need to register an email address with Apple in order to download and install applications; (e) Bishop had registered one email address with the state. Based on these facts, Montgomery concluded: "The evident use of an IOS phone by Bishop, with its attendant need for an email account in order to install applications, lead [your] affiant to believe that Bishop has willfully failed to register this unknown email account in violation of [§] 943.0435(9)." A state judge issued the warrant based solely on the affidavit.

5

While not listed in the affidavit, Montgomery testified that he knew from training and experience that sex offenders often registered a single email address while using other unregistered email addresses. One reason sex offenders did so, Montgomery explained, was that many social media companies like Facebook queried the state registration data and would not allow a sex offender to sign up using a registered email.

After obtaining the warrant, Montgomery searched Bishop's iPhone. During the search, Montgomery came across a readily apparent image of child pornography as he looked through photographs on the phone to try to verify the phone's owner. At that point, Montgomery stopped the search and then applied for and obtained a second warrant to search the phone, this time for evidence of child pornography. The second search revealed around 70 images of child pornography. At that point, Montgomery applied for and obtained a warrant for Bishop's arrest. Upon his arrest, Bishop was in possession of another smartphone, a subsequent search of which revealed additional images of child pornography.

## B.    *Federal Court Proceedings*

A federal grand jury returned an indictment charging Bishop with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2), and four counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B) and (b)(1).

1.    Bishop's Motion to Suppress

Bishop moved to suppress all evidence of child pornography, arguing that the facts set forth in the affidavit for the first search warrant were insufficient to support a finding of probable cause. He did not independently challenge the subsequent two searches of his phones, but he argued that all evidence obtained from his phones was tainted by the initial unlawful search.

The district court held a suppression hearing on August 13, 2015. At the hearing, the court heard testimony from the following persons: Colleen Brady-Svitak, who was a probation supervisor for the Florida Department of Corrections; Paulin, who was Bishop's probation officer; Amole, who arrested Bishop on February 4; and Montgomery, who applied for the search warrants. Notably, at the hearing Bishop did not challenge the probation officers' testimony that the sex-offender conditions of his probation prohibited him from accessing the internet.

The district court orally denied the motion to suppress for reasons stated on the record. The court first determined that the search-warrant affidavit was sufficient to establish probable cause. Probable cause existed, in the court's view, because the state judge who issued the warrant was given facts that Bishop was in possession of an iPhone, that "this device is the kind that requires an email address, it's the kind of device that is used to access the internet, and [as] a registered sex offender, this conduct was simply not permitted."

Even if probable cause to issue the warrant was lacking, the district court continued, suppression was not appropriate because Montgomery had acted in good faith, under the Supreme Court's decision in *United States v. Leon*, 468 U.S. 897 (1984), and because the evidence would have been discovered inevitably.  On the issue of inevitable discovery, the court found that the issue "turn[ed] on whether or not a warrantless search would have been proper," because there was no dispute that, before Montgomery applied for the warrant, he had been "given permission by Probation Officer Paulin on February 5 . . . to search the iPhone without a warrant."  The court found that a warrantless search based on reasonable suspicion would have been permitted because Bishop had a diminished expectation of privacy in his iPhone due to the conditions of his probation and because reasonable suspicion to search "clearly existed."

   2.    Motion *in Limine*

A few days before trial, Bishop filed a motion *in limine* asking the district court to limit the "extent, quantity, and quality" of evidence the government intended to admit through Rule 414, Fed. R. Evid.  More precisely, Bishop wanted to prevent the jury from hearing the name of his prior state conviction for attempted lewd and lascivious molestation of a minor under twelve years of age. He was willing to stipulate that he had a prior conviction and that he was on community control with various conditions.

8

The district court orally denied the motion *in limine* before jury selection. Noting that the evidence of Bishop's prior conviction was admissible under Rule 414, the court found that the relevant question was whether the evidence satisfied Rule 403, which requires a balancing of probative value and prejudice. The court found that the evidence was probative of his possession of the phone, his lack of mistake, and his intent to possess or receive the images of child pornography. Turning to prejudice, the court explained that the nature of the prior conviction was unlikely to excite the emotions of the jury to the extent that it would lead to irrational behavior. The court also noted that, while the conviction was over ten years old, Bishop had been arrested for possession of the images within a short time after his release from prison. Concluding that the probative value of the evidence was not substantially outweighed by the risk of unfair prejudice, the court denied the motion *in limine*.

3.    *Voir Dire*

During the district court's introductory statements to prospective jurors, the court explained that Bishop was on trial for charges of possession and receipt of child pornography, including "visual depictions of a minor who has not yet attained the age of 12 engaging in sexually explicit conduct." Later, the court asked all of the prospective jurors:

> [D]o any of you know of any reason that you may be prejudiced for or against the government or the defendant in this case because of the

9

nature of the case or otherwise?  That is being prejudiced for or against the government or the defendant due to the nature of the case[,] and before we raise hands let me just mention this.  Every individual who appears in court is presumed to be innocent.  And the government has the burden of proving an individual's guilt on each and every count beyond and to the exclusion of every reasonable doubt.  And as a result, the defendant starts this case, as all individuals do, with the presumption of innocence.

With that qualifier and being aware of the nature of the charges set forth in the indictment, does anyone believe they would be prejudiced for or against the government or the defendant because of the nature of the charges?

The court questioned each of the prospective jurors who had raised a hand.

Later, while the prospective jurors were out of the room, defense counsel indicated that he wanted to ask the jurors the following question:  "Is the fact that [Bishop] has previously been convicted of a sex offense related to a minor, in and of itself, going to impair or materially affect your ability to remain fair and impartial in this case?"  Defense counsel expressed concern that jurors would convict Bishop based solely on his prior conviction.  He also requested that the court ask all the jurors if viewing graphic images of child pornography would affect their impartiality.

The district court refused Bishop's proposed question regarding his prior conviction.  In the court's view, the question went beyond issues of fairness and impartiality and strayed into the territory of "whether the government has a good case or a bad case."  The court found it inappropriate to ask how prospective jurors

10

would react to specific pieces of evidence. But the court accepted Bishop's other suggestion and asked the prospective jurors whether they could be fair and impartial in light of the potentially graphic nature of the images, following up individually with those who indicated it could be a problem.

### 4. Trial

The government's case against Bishop was tried over two days. After the jury was sworn, the district court explained preliminary matters to the jury, including that some evidence was admitted for a limited purpose and that they must consider such evidence only for that limited purpose. Then, when instructing the jury after closing arguments, the court gave Bishop's proposed jury instruction, which stated that evidence of a prior conviction was not sufficient, by itself, to prove that he was guilty of the crimes charged in the indictment. The jury found Bishop guilty on all five counts.

### 5. Sentencing

Based on a criminal history category of III and a total offense level of 30, the presentence investigation report ("PSR") recommended a guideline range of 121 to 151 months of imprisonment. However, Bishop was subject to a 180-month mandatory minimum for Counts 2 through 5 (receipt of child pornography). At sentencing, the district court adopted the PSR's guideline calculations and, despite the parties' agreement that a total sentence of 180 months of imprisonment was

appropriate, sentenced him to a total prison term of 280 months, citing in particular the needs for deterrence and protection of the public.  Bishop now appeals.

## II.  Motion to Suppress

Bishop first challenges the denial of his motion to suppress, arguing that the affidavit in support of the first search warrant was insufficient to establish probable cause to search and that no exception to the exclusionary rule applies.  He asserts that the evidence of child pornography obtained from the subsequent two searches of his phones is suppressible as fruit of the poisonous tree.

In reviewing a district court's denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*. *United States v. Johnson*, 777 F.3d 1270, 1274 (11th Cir. 2015).  We construe the facts in the light most favorable to the party who prevailed below.  *United States v. Hooshmand*, 931 F.2d 725, 735 (11th Cir. 1991).

Our inquiry proceeds in two steps.  We first ask whether the facts set forth in the affidavit constituted a substantial basis for a finding of probable cause. Because we find probable cause lacking, we then evaluate whether an exception to the exclusionary rule applies.

## A.    *Sufficiency of the Search Warrant Affidavit*

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. Const. amend. IV.  The

task of the magistrate issuing a warrant is to make a practical, common-sense decision whether, given all the circumstances set forth in the probable cause affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.* at 238–39.

"We review *de novo* whether the facts set forth in an affidavit constitute a sufficient basis for a finding of probable cause." *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011). A probable-cause affidavit must state facts sufficient to justify a conclusion that evidence of a crime will probably be found. *United States v. Martin*, 297 F.3d 1308, 1314 (11th Cir. 2002). The affidavit should establish a connection between the defendant and the place to be searched and a link between the place to be searched and any criminal activity. *Id.*

Although our review of the sufficiency of the affidavit is "*de novo*," we must give "great deference" to the magistrate's decision and uphold "the magistrate's findings even in marginal or doubtful cases." *United States v. Nixon*, 918 F.2d 895, 900 (11th Cir. 1990). "Deference to the magistrate, however, is not boundless." *Leon*, 468 U.S. at 914. The facts set forth in the affidavit must provide a sufficient basis for a finding of probable cause; reviewing courts owe no deference when the magistrate issues a warrant based solely on conclusory

allegations. *Id.* at 915; *United States v. Glinton*, 154 F.3d 1245, 1257 (11th Cir. 1998).

Here, we agree with Bishop that the facts set forth in the affidavit failed to provide a substantial basis for concluding that probable cause existed. Although the affidavit established a connection between Bishop and the iPhone, it failed to establish a link between the iPhone and any criminal activity. *See Martin*, 297 F.3d at 1314. The affidavit alleges that Bishop used an unregistered email address in connection with his iPhone. But the affidavit gives no reason to suspect that Bishop either did not use or could not have used his registered hotmail.com email address for that purpose. Notably, Montgomery acknowledged at the suppression hearing that Bishop could have used his registered email address as his Apple ID. So, if Bishop could have used his registered email address as his Apple ID, the fact that he possessed an iPhone and used it to download applications over the internet does not suggest that he failed to register an email address. Accordingly, the affidavit did not state facts sufficient to justify a conclusion that evidence of a crime would probably be found. *See id.*

## B.    *Whether the Exclusionary Rule Applies*

Evidence obtained in violation of an individual's rights under the Fourth Amendment ordinarily must be excluded from the prosecution's case. *Martin*, 297 F.3d at 1312. The exclusionary rule, as it is known, is a judicially created remedy

designed to deter future Fourth Amendment violations.  *Id.*  But the fact that a Fourth Amendment violation occurred does not automatically mean that the exclusionary rule applies.  *Herring v. United States*, 555 U.S. 135, 141 (2009). The application of the exclusionary rule depends on a cost-benefit analysis that takes into account the deterrent value served by suppression and "the substantial social costs generated by the rule."  *Davis v. United States*, 564 U.S. 229, 237 (2011) (internal quotation marks omitted).  "For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs."  *Id.*

The district court concluded that two exceptions to the exclusionary rule applied in this case.  First, the court found that suppression was not warranted because Montgomery had acted in good faith—that is, his conduct was objectively reasonable.  The court rejected Bishop's contention that the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."[2]  *Leon*, 468 U.S. at 923 (quotation marks omitted).  Second, the court found that the evidence of child pornography would

---

[2]  The district court appears to have relied on facts outside of the affidavit in evaluating the sufficiency of the affidavit under *Leon*, though the transcript is not entirely clear on the matter.  In doing so, the court may have erred.  *See United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003) ("In *Martin*, we indicated that, in order to determine whether an affidavit lacked sufficient indicia of probable cause, we must look only at the face of the affidavit."). *Martin* suggests that the inquiry into whether an affidavit contains sufficient indicia of probable cause is limited to the face of the affidavit, but once such indicia are found, the court can "look beyond the four corners of the affidavit to determine whether the *Leon* good-faith exception applies."  *See Martin*, 297 F.3d at 1319 n.11.

have been discovered inevitably through lawful means, specifically through a warrantless search of Bishop's iPhone for evidence of a probation violation.

Here, even assuming *arguendo* that the search warrant affidavit was wholly deficient and that the good-faith exception does not apply, the district court still properly denied Bishop's suppression motion because the evidence of child pornography was admissible under the inevitable-discovery doctrine. Accordingly, we need not and do not address the issue of good faith.

The Supreme Court has explained that there is no rational basis to suppress evidence obtained by unconstitutional methods if the government can prove that the evidence would have been obtained inevitably by lawful means. *Nix v. Williams*, 467 U.S. 431, 447 (1984). For evidence to be admissible under the inevitable-discovery doctrine, the government must establish two things: (1) a "reasonable probability that the evidence in question would have been discovered by lawful means"; and (2) "the lawful means which made discovery inevitable were being actively pursued prior to the occurrence of the illegal conduct." *Johnson*, 777 F.3d at 1274 (quoting *Jefferson v. Fountain*, 382 F.3d 1286, 1296 (11th Cir. 2004)).

Bishop's initial brief on appeal challenges only the second requirement—whether Deputy Montgomery and Probation Officer Paulin were in "active pursuit" of a lawful means of discovery. Accordingly, he has abandoned his

challenge to the first requirement by not raising the issue in his initial brief.  *See*

*United States v. Nealy*, 232 F.3d 825, 830–31 (11th Cir. 2000).  His arguments on

this issue in the reply brief come too late.  *See Lopez*, 649 F.3d at 1246.

In any case, even assuming the issue has been properly raised, the

government established a reasonable probability that the evidence in question

would have been discovered by lawful means.  Specifically, we agree with the

district court's findings, explicit or implicit, that (1) no more than reasonable

suspicion was needed to conduct a warrantless search of Bishop's iPhone, (2)

reasonable suspicion to search for evidence of a probation violation existed, and

(3) a search of the phone for evidence of a probation violation likely would have

uncovered the evidence of child pornography.

First, the district court properly concluded that a warrantless search of

Bishop's iPhone would have been reasonable under the balancing test set forth in

*United States v. Knights*, 534 U.S. 112, 118–19 (2001).  In *Knights*, the Supreme

Court examined the reasonableness of a warrantless search by a law-enforcement

officer of a probationer for investigative purposes.  *See id.* at 115–16.  The Court

explained "that the reasonableness of a search is determined by assessing, on the

one hand, the degree to which it intrudes upon an individual's privacy and, on the

other, the degree to which it is needed for the promotion of legitimate

governmental interests."  *Id.* at 118–19.  Because probationers subject to a

condition authorizing warrantless searches have a greatly diminished expectation of privacy, while the government has a considerable interest in supervising probationers, the Court held that warrantless searches of a probationer subject to a search condition based on reasonable suspicion are reasonable under the Fourth Amendment. *See id.* at 119–21.

In *United States v. Yuknavich*, we extended *Knights* to a situation in which no warrantless search condition was present. 419 F.3d 1302, 1309–10 (11th Cir. 2005). *Yuknavich*, like this case, involved a sex-offender probationer who was subject to limitations on computer and internet usage. *See id.* at 1304–05, 1310 (restricting internet usage to "work related purposes" during "work hours). Because of these limitations, we explained, Yuknavich should have been prepared to answer questions about his internet usage and to have "the officers . . . conduct their own research to find the answers." *Id.* at 1310. In light of the internet limitation, in conjunction with the crime for which Yuknavich was convicted (relating to child pornography) and his conduct while on probation, we found that Yuknavich's expectation of privacy in his computer was greatly diminished and that no more than reasonable suspicion was needed to conduct a search of his computer. *Id.* at 1310–11.

Here, Bishop's legitimate expectation of privacy in his iPhone was greatly reduced both by a warrantless search condition and a specific restriction on internet

usage.  Bishop was required to "submit to a warrantless search by the probation officer of [his] person, residence or vehicle," and he was prohibited from viewing or possessing any electronic pornographic material relevant to his deviant behavior pattern.[3]  As in *Yuknavich*, Bishop should have been prepared to answer questions about his use of a smartphone and he should have been prepared for officers to conduct their own research to find the answers.  *See id.* at 1310.  Additionally, the government's interests in supervision were significant, as both *Knights* and *Yuknavich* make clear.  *See Knights*, 534 U.S. at 120; *Yuknavich*, 419 F.3d at 1310 (noting states' vital interest in rehabilitating sex offenders).  Accordingly, no more than reasonable suspicion was needed to search Bishop's iPhone.

Second, reasonable suspicion to search Bishop's iPhone existed, even assuming, as Bishop asserts, that his probation conditions did not completely prohibit him from possessing a smartphone or accessing the internet.  Reasonable suspicion exists when, under the totality of the circumstances, officers have a particularized and objective basis for suspecting legal wrongdoing.  *Yuknavich*, 419 F.3d at 1311.  For this analysis, we consider the facts known to Probation Officer Paulin and Deputy Montgomery before Paulin authorized Montgomery to

---

[3]  Although the warrantless search condition did not specifically address a "cellphone" or a person's "effects," no reasonable sex-offender probationer would believe that a cellphone in his possession was excepted from the broad scope of this search condition.  In any case, the lack of a search condition would not sway the *Knights* balancing test here in light of the restrictions on internet usage and the crime for which Bishop was convicted.  *See Yuknavich*, 419 F.3d at 1310–11.

19

search Bishop's iPhone for evidence of a probation violation.[4]    They knew that Bishop had been convicted of a sex offense involving a minor and was subject to restrictions on internet usage.  They also knew that Bishop was in possession of an iPhone, that the phone had not been disclosed to Paulin, that Paulin had told Bishop (correctly or incorrectly) that he was not allowed to access the internet, that one of the main functions of a smartphone is internet access, and that Bishop appeared to be very nervous about the phone.  In light of these facts, the officers had reasonable suspicion to suspect that Bishop's use of his iPhone violated his probation.  *See id.*

Finally, these facts also demonstrate a reasonable probability that the evidence in question would have been discovered by a reasonable warrantless search of Bishop's iPhone.   *See Johnson*, 777 F.3d at 1274.   Given the circumstances of the discovery of the phone, the restrictions on Bishop's internet usage, and the need to confirm that Bishop owned the phone, there is a reasonable probability that the evidence of child pornography would have been discovered during a lawful search of the phone for evidence of a probation violation.  In sum, the first requirement for the inevitable-discovery doctrine was met because the government established lawful means that made discovery inevitable.  *See id*.

---

[4]    We do not consider the subjective beliefs or motivations of either Paulin or Montgomery, and we evaluate the existence of reasonable suspicion based on the "collective knowledge of the officers."  *See United States v. Nunez*, 455 F.3d 1223, 1226 (11th Cir. 2006).

20

Turning to the second requirement for the inevitable discovery doctrine—that the lawful means that made discovery inevitable were being "actively pursued" prior to the occurrence of the illegal conduct—Bishop argues that Deputy Montgomery and Probation Officer Paulin were not "actively pursuing" a lawful means of discovery prior to the illegal search because the only effort to obtain the evidence was through the invalid search warrant. Bishop asserts that the district court failed to apply this requirement.

Initially, the record belies Bishop's assertion that the district court failed to apply the active-pursuit requirement. In context, the court found this requirement met because Paulin had asked Montgomery to conduct a warrantless search of the phone before the alleged illegality involving the warrant affidavit. *See United States v. Cataldo*, 171 F.3d 1316, 1319 n.6 (11th Cir. 1999) ("[W]e do not assume that the district judges do not know the law: their ambiguous oral statements, if possible, are interpreted to be consistent with (and not inconsistent with) the law."). And such a search, as we have established, would have been lawful.

Bishop's contention that the inevitable-discovery doctrine cannot apply because only one search in fact occurred is inconsistent with our precedent. Indeed, we have explained that "'[a]ctive pursuit' does not require that police have already planned the particular search that would obtain the evidence. The government must instead establish that the police would have discovered the

evidence 'by virtue of ordinary investigations of evidence or leads already in their possession.'" *Johnson*, 777 F.3d at 1274–75 (quoting *United States v. Virden*, 488 F.3d 1317, 1323 (11th Cir. 2007)); *see id.* at 1275 ("[T]he purpose of the requirement of active pursuit is to exclude evidence that was not being sought in any fashion.").

Here, the investigation into whether Bishop's use of the iPhone violated the terms of his probation is "the lawful means which made discovery inevitable." *See id.* at 1275. And those means were being "actively pursued" because, as the district court found, Paulin had authorized a warrantless search of Bishop's phone for evidence of a probation violation before the assumedly illegal conduct involving the search warrant. That search, in turn, would have been lawful and likely would have led to the discovery of the child pornography on the phone.

Applying the exclusionary rule in these circumstances would effectively punish the government for Montgomery's decision to apply for a warrant that was not necessary. In other words, if we were to rule in Bishop's favor, "we would put the government in a worse position than had the [alleged] police misconduct not occurred, an outcome that the inevitable discovery exception was fashioned to avoid." *See id.* "Subtract the illegal search from the factual picture in this case and nothing of substance would have changed." *See id.* at 1274 (alteration adopted) (internal quotation marks omitted).

22

Because the government established that the evidence of child pornography from Bishop's iPhone would have been obtained inevitably by lawful means being actively pursued, there is no rational basis to suppress the evidence even if the initial search warrant was invalid. *See Nix*, 467 U.S. at 447. Accordingly, we affirm the denial of Bishop's motion to suppress.

## III. Jury *Voir Dire*

Bishop next argues that the district court erred in denying his request to ask the prospective jurors about whether they could be fair and impartial despite his prior conviction for a sex offense involving a minor. Bishop contends that the court's inquiry was insufficient to reveal possible juror prejudice and that, as a result, he was denied a fair trial.

"The district court has wide discretion in determining which questions are asked during voir dire," subject to the essential demands of fairness. *United States v. Nash*, 910 F.2d 749, 753 (11th Cir. 1990); *United States v. Tegzes*, 715 F.2d 505, 507 (11th Cir. 1983). Because the district court has immediate contact with the *voir dire* proceeding, it is in a far superior position to evaluate particular *voir dire* questions than we are, since we can only rely on the cold record in conducting our review. *Nash*, 910 F.2d at 753. Even if the district court failed to ask a particular question that may be warranted in a case, we will find no abuse of discretion if the *voir dire* questioning as a whole gave "reasonable assurance to the parties that any

prejudice of the potential jurors would be discovered." *Id.*; *see United States v. Hill*, 643 F.3d 807, 836 (11th Cir. 2011); *Tegzes*, 715 F.2d at 507 ("The standard has also been phrased as whether the district judge's overall examination, coupled with his charge to the jury, affords a party the protection sought." (internal quotation marks omitted)).

Here, the district court acted within its wide discretion in refusing Bishop's request to ask prospective jurors about his prior conviction for a child sex offense. We do not doubt that juror prejudices might be "reasonably suspected" where the defendant has been convicted of child molestation. *See United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1037 (11th Cir. 2005). Yet a similar prejudice was inherent in the nature of the charges. The court made clear that the case involved child pornography, including graphic "visual depictions of a minor who has not yet attained the age of 12 engaging in sexually explicit conduct," and the court asked prospective jurors about their impartiality in light of these matters and then independently questioned jurors who self-reported the possibility of prejudice. As a whole, the court's *voir dire* questioning was sufficient to give "reasonable assurance to the parties that any prejudice of the potential jurors would be discovered." *Nash*, 910 F.2d at 753.

Bishop's main concern appears to have been that jurors would overvalue the prior conviction and fail to render a verdict based solely on the evidence presented

at trial. But the court sufficiently alleviated the potential for prejudice in this respect by charging the jury that evidence of a prior conviction was not sufficient, by itself, to prove that Bishop was guilty of the crimes charged in the indictment. Overall, the court's questioning, coupled with its charge to the jury, afforded Bishop the protection sought. *See Tegzes*, 715 F.2d at 507.

## IV.  Motion *In Limine*

Relatedly, Bishop argues that the district court erred in denying his motion *in limine* to exclude the name of his prior conviction for attempted lewd and lascivious molestation of a minor. The district court admitted the evidence under Rule 414, Fed. R. Evid. We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010).

Rule 414 of the Federal Rules of Evidence provides in part, "In a criminal case in which the defendant is accused of an offense of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). "Child molestation" is defined to include the possession and receipt of child pornography under 18 U.S.C. § 2252A. *United States v. Woods*, 684 F.3d 1045, 1064 (11th Cir. 2012); *see* Fed. R. Evid. 414(d)(2)(B). Accordingly, evidence of Bishop's prior conviction was admissible so long as it satisfied the

25

other rules of evidence, including Rule 403. *See Woods*, 684 F.3d at 1064; Fed. R. Evid. 414(c) ("This rule does not limit the admission or consideration of evidence under any other rule.").

"[U]nder Rule 403, the district court may exclude otherwise-admissible evidence if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant." *Woods*, 684 F.3d at 1064–65. But "courts must employ Rule 403 only sparingly since it permits the trial court to exclude concededly probative evidence." *Id.* at 1063 (internal quotation marks omitted).

Here, the district court did not abuse its discretion by admitting the evidence of Bishop's prior conviction for attempted lewd and lascivious molestation of a minor. As the record shows, the court conducted the balancing analysis under Rule 403 and reasonably concluded that the evidence was not more prejudicial than probative. Bishop's prior conviction was probative of, among things, his interest in child pornography and his intent to possess and receive the images, which made it more likely that Bishop, and not someone else, as he argued at trial, was responsible for the child pornography found on the two cell phones. *See id.* at 1065. Omitting the nature of the conviction, as Bishop suggested, would have nullified the evidence's probative value.

The court's conclusion that the risk of unfair prejudice was not disproportionate to the probative value of the evidence was reasonable and is

entirely consistent with our precedent on similar Rule 403 challenges. *See id.* (affirming admission of defendant's statement describing his molestation of his niece); *United States v. McGarity*, 669 F.3d 1218, 1244 (11th Cir. 2012) (affirming admission of defendant's statement detailing his molestation of his two-year-old daughter). Accordingly, the court properly admitted evidence of Bishop's prior state conviction under Rule 414.

## V. Sentencing

Finally, Bishop challenges the substantive reasonableness of his sentence, arguing that the 280-month sentence he received was greater than necessary to serve the purposes of sentencing. He claims that the court committed a clear error of judgment by relying on his prior conviction to impose an upward variance when that conviction had already been accounted for in his guideline range and had increased his mandatory minimum penalty.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 41 (2007). When reviewing the reasonableness of a sentence, we first ensure that the district court committed no significant procedural error, though Bishop does not assert procedural error and we see no error apparent. *Id.* at 51. We then examine whether the sentence was substantively reasonable in light of the totality of the circumstances. *Id.*

27

The district court must impose a sentence "sufficient, but not greater than necessary to comply with the purposes" of sentencing listed in 18 U.S.C. § 3553(a)(2).   These purposes are retribution, deterrence, incapacitation, and rehabilitation.  *See* 18 U.S.C. § 3553(a)(2).  The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

The court must consider all of the § 3553(a) factors, but it may, in its discretion, give greater weight to some factors over others.  *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015).  Moreover, "[i]n assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts."  *Id.* at 1260.  Additionally, "a district court can rely on factors in imposing a variance that it had already considered" in calculating the guideline range.  *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010); *United States v. Amedeo*, 487 F.3d 823, 833–34 (11th Cir. 2007) (noting that "exceptional circumstances" in that case justified such reliance).

If the court chooses to vary from the guideline range after weighing the § 3553(a) factors, we "may not presume that [the] sentence . . . is unreasonable and must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (*en banc*) (internal quotation marks omitted). A major variance requires a more significant justification than a minor one. *Id.* at 1196.

The party challenging the sentence bears the burden of demonstrating that the sentence is unreasonable "in light of the entire record, the § 3553(a) factors, and the substantial deference afforded to sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256. A sentencing court may abuse its discretion by (1) failing to afford consideration to relevant factors that were due significant weight; (2) giving significant weight to an improper or irrelevant factor; or (3) committing a clear error of judgment in weighing the proper factors. *Irey*, 612 F.3d at 1189. A district court's unjustified reliance on any one § 3553(a) factor may be indicative of an unreasonable sentence. *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006).

Here, Bishop has not shown that his total sentence of 280 months of imprisonment is substantively unreasonable. The record shows that the court fully considered the § 3553(a) factors and reasonably concluded that upward variance was warranted to serve the purposes of deterrence and protection of the public. *See*

29

18 U.S.C. § 3553(a)(2).  As the district court noted, Bishop spent over a decade in prison for an offense involving sexual contact or attempted sexual contact with a minor and, upon his release, immediately began "downloading horrific images of very young children being abused."  Then, after his first phone had been seized, he obtained a second phone and obtained more images of child pornography.  The court found that the 12-year term of imprisonment had had no deterrent effect and reasonably concluded that, in light of the prior contact offense and Bishop's conduct immediately upon release, he posed a clear danger to society.  *See United States v. Turner*, 626 F.3d 566, 574 (11th Cir. 2010) ("Turner poses a more dangerous threat to society than many child pornography defendants given his history of actually abusing a small child and the increased recidivism of child sexual abusers.").

Even though Bishop's prior conviction was already accounted for in his guideline range and the mandatory minimum, the court was permitted to rely on it in imposing an upward variance because it was relevant both to the story of Bishop's offense conduct in this case and to the § 3553(a) factors on which the upward variance was based.  *Rosales-Bruno*, 789 F.3d at 1260; *Rodriguez*, 628 F.3d at 1264.  Nothing about the court's explanation of the sentence leads us to conclude that the court gave undue weight to the prior conviction, or that the court

30

otherwise abused its considerable discretion in weighing the proper § 3553(a) factors.

We also note that the sentence is within the range of sentences that this Court has approved as substantively reasonable in broadly similar cases involving child pornography. *See e.g.*, *United States v. Brown*, 772 F.3d 1262, 1266 (11th Cir. 2014) (affirming as reasonable a 240-month sentence of imprisonment where the guideline range was 78 to 97 months); *Turner*, 626 F.3d at 574 (affirming as reasonable a 300-month sentence where the guideline range was 180 to 210 months). Additionally, the sentence was well below the statutory maximum of 480 months' imprisonment for even one conviction under 18 U.S.C. § 2252A(a)(2)(B) and (b)(1), much less than the 2,160 months that Bishop could have received had all of his sentences run consecutively, which is a further indicator of the sentence's reasonableness. *See United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008) (holding that the sentence was reasonable in part because it was well below the statutory maximum).

In short, Bishop's sentence is substantively reasonable.

## VI. Conclusion

For the reasons stated, we **AFFIRM** Bishop's convictions and his total sentence of 280 months of imprisonment.